**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**WARREN LOVE,**

      **Petitioner,**

                                   **Case No. 2:16-cv-19**
      **v.**                          **JUDGE ALGENON L. MARBLEY**
                                        **Magistrate Judge King**

**WARDEN, ROSS
CORRECTIONAL INSTITUTION,**

      **Respondent.**

<u>**OPINION AND ORDER**</u>

      Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition* (Doc. No. 3), Respondent's *Return of Writ* (Doc. No. 7)*,* Petitioner's *Traverse* (Doc. No. 8), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

      The Ohio Fourth District Court of Appeals summarized the facts and procedural history of the case as follows:

> This is an appeal from a Hocking County Common Pleas Court judgment convicting Appellant after a jury found him guilty of five felony offenses, which included aggravated robbery and felonious assault, both with firearm specifications, tampering with evidence, aggravated trafficking in drugs, and having weapons while under a disability. Appellant was sentenced to an aggregate sentence of twenty-three years as a result of his convictions. On appeal, Appellants raises two assignments of error, contending that 1) his conviction was based upon insufficient evidence; and 2) the trial court committed harmful error in imposing sentence.
>
> Because we conclude that a rational trier of fact could have found all of the essential elements of aggravated robbery were proven

beyond a reasonable doubt and, as such, that Appellant's conviction for aggravated robbery was supported by sufficient evidence, Appellant's first assignment of error is overruled. Further, in light of our conclusion that Appellant's aggravated robbery and felonious assault convictions involved two separate victims, we cannot conclude that the trial court erred in failing to merge these convictions for purposes of sentencing. Finally, because the trial court was required, under R.C. 2929.14(B)(1)(g) to impose consecutive sentences for both firearm specifications, we find no "harmful error" in the imposition of the sentences. As such, Appellant's second assignment of error is also overruled. Accordingly, the decision of the trial court is affirmed.

FACTS

A multi-count indictment was brought against Appellant on February 22, 2013, charging Appellant with aggravated robbery with a firearm specification, a first degree felony in violation of R.C. 2911.01(A)(1) and 2941.145, felonious assault with a firearm specification, a second degree felony in violation of R.C. 2903.11(A)(2) and 2941.145, tampering with evidence, a third degree felony in violation of R.C. 2921.12(A)(1), aggravated trafficking in drugs, a third degree felony in violation of R.C. 2925.03(A)(1), having weapons while under a disability, a third degree felony in violation of R.C. 2923.13(A)(2), and receiving stolen property, a fifth degree felony in violation of R.C. 2913.51(A). Appellant pled not guilty and the matter proceeded to a two-day trial, beginning on June 11, 2013.

The State's theory at trial was that a drug transaction was arranged as a "subterfuge" to commit robbery. The State presented three witnesses [who] were present the night the incident occurred: Sarah Williamson, Thomas Bailey, and Michael Herrold. Williamson testified that she had been in contact with an old friend, Amanda Thompson, [who] had asked her if she could "get rid of any Perc 30s[,]" or 30 mg. Percocet pills. She testified that her friend, Thomas Bailey, wanted some, so she essentially set up the transaction, the plan being for Thompson to bring the drugs to a local Speedway. Apparently, however, when it was all said and done, Thompson arrived in town with two other adults and a baby in her vehicle, and came to Williamson's house instead of Speedway.

Williamson testified that Thomas Bailey and Michael Herrold were with her on the night of the incident. She testified that after she handed the money for the drugs to an occupant named Sharvonne,

2

who was seated in the front seat of the vehicle, Appellant, who was seated in the back of the vehicle, jumped out with a gun, told Bailey and Herrold to get on the ground, and then went through Bailey's pockets. Williamson then detailed the events that led to a shooting, which formed the basis of the felonious assault charge, which is not at issue on appeal.

Bailey and Herrold also testified[;] however, both denied any knowledge of a drug transaction. Their testimony will be detailed more fully below, however, both testified in accordance with Williamson, with respect to Appellant jumping out the vehicle with a gun, ordering them to the ground, and robbing Bailey. The defense theory at trial seemed to be that this was simply a drug deal that went wrong, and that no theft offense, and thus, no aggravated robbery occurred. However, Appellant did not testify at trial, nor present any witnesses in his defense. At the close of the State's evidence, Appellant moved for acquittal pursuant to Crim.R. 29(A), which was denied by the trial court, and the matter was submitted to the jury for determination.

The jury convicted Appellant of aggravated robbery, felonious assault, aggravated trafficking in drugs, tampering with evidence, having a weapon while under a disability, and both firearm specifications. Appellant was acquitted on the charge of receiving stolen property. The trial court sentenced Appellant to a ten-year term of imprisonment on the aggravated robbery conviction and a seven-year term of imprisonment on the felonious assault conviction, to be served consecutively to one another. The trial court also sentenced Appellant to three-year terms of imprisonment on each firearm specification, to be served consecutively to one another and consecutively to the underlying charges, for an aggregate prison term of twenty-three years. The sentences for the remaining convictions were ordered to be served concurrently to these sentences.

*State v. Love,* No. 13CA16, 2014 WL 1494128, at *1-2 (Ohio App. 4th Dist. April 10, 2014).  On

April 10, 2014, the appellate court affirmed the judgment of the trial court.  *Id.*  On September 3,

2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  *State v. Love*, 140

Ohio St.3d 1417 (2014).

On July 14, 2014, Petitioner filed an application to reopen the appeal pursuant to Ohio

Appellate rule 26(B), alleging that he had been denied the effective assistance of appellate

3

counsel because his attorney failed to raise on appeal a claim that the evidence was constitutionally insufficient to sustain his convictions; that the trial court had improperly imposed sentence; that he had been denied the effective assistance of trial counsel based on his attorney's waiver of Petitioner's right to a speedy trial, waiver regarding admission of Petitioner's prior juvenile record, and inadequate trial performance; that the trial court had improperly permitted the admission of perjured testimony; that his convictions were against the manifest weight of the evidence; that he had been denied a fair trial due to prosecutorial misconduct; and that cumulative error had denied him due process. *Application for Reopening* (Doc. No. 7-1, PageID# 229-235). On October 2, 2014, the appellate court denied that application as untimely. *Decision and Judgment Entry* (Doc. No. 7-1, PageID# 253). On January 28, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal from that decision. *Entry* (Doc. No. 7-1, PageID# 286).

On January 8, 2016, Petitioner filed the *pro se Petition* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleges that the evidence was constitutionally insufficient to sustain his convictions (claim one); that the trial court improperly imposed consecutive terms of incarceration (claim two); that he was denied the effective assistance of trial counsel due to his attorney's failure to object to the introduction of Petitioner's prior juvenile record, to impeach witnesses, to file a motion to suppress evidence, to object to the imposition of sentence, inadmissible evidence or prosecutorial misconduct (claims three and four); that he was denied a fair trial due to the admission of perjured testimony (claim five); that he was denied a fair trial because of prosecutorial misconduct (claim six); that he was denied the effective assistance of appellate counsel (claim seven); and that he was denied due process because the state courts failed to investigate and consider his claim that the clerk had withheld his Rule 26(B) application

past the filing deadline (claim eight).  Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

## Merits

### Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the familiar standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this case.  The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy."  *Burt v. Titlow*,—U.S.—, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

Federal courts are prohibited from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of

5

> rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)).  The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49.  The burden of satisfying AEDPA's standards rests with the petitioner.  *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

## Claim One

In claim one, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions, in light of inconsistent trial testimony, because prosecution witness Sarah Williamson lied, and due to the admission of his prior juvenile record.  For the reasons discussed *infra*, Petitioner has waived this claim, except to the extent that he raises the same claim that he

6

did on direct appeal, where he challenged the sufficiency of the evidence only in relation to his conviction on the charge of aggravated robbery.  Thus, this Court will address only that same claim here.

In rejecting this claim, the state appellate court reasoned as follows:

> Appellant contends that the trial court erred in failing to direct a verdict in his favor at the conclusion of the State's case, and that his conviction for aggravated robbery was not supported by sufficient evidence.  More specifically, Appellant argues that evidence of a predicate theft offense was lacking, and without such, there can be no aggravated robbery. Appellant also suggests that the use of the firearm was in furtherance of a drug transaction, rather than a theft offense.

> "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006–Ohio2417, 847 N.E.2d 386 (2006), ¶ 37. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) (stating that "sufficiency is a test of adequacy"); *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979); *Jenks* at 273, 574 N.E.2d 492. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390, 678 N.E.2d 541.

> Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226

(2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

On appeal, Appellant challenges his conviction for aggravated robbery, a first degree felony in violation of R.C. 2911.01(A)(1), as well as the firearm specification attached thereto. R.C. 2911.01 provides, in pertinent part, as follows:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

The firearm specification at issue was brought pursuant to R.C. 2941.145.

Here, a review of the trial transcript indicates that three different witnesses testified on behalf of the State, claiming that Appellant emerged from the back seat of a vehicle with a gun and ordered both Thomas Bailey and Michael Herrold to the ground. Sarah Williamson testified that this occurred in the midst of a drug transaction, after she had handed cash for drugs to someone in the front seat of the car. She testified that after she handed over the money to an occupant in the front seat, Appellant, who was seated in the back, jumped out with a gun. Thomas Bailey testified that he randomly stopped by Williamson's house, denying that he was involved in a drug transaction, and that Appellant jumped out of the backseat of a vehicle, approached him with a gun, ordered him to the ground, searched his pockets and took his money. Michael Herrold testified that although he was ordered to the ground he did not get down, but instead stood as Appellant went through Bailey's pockets. Subsequently, as Appellant fled and tried to catch up with the vehicle as it was driving off, and as Bailey and Herrold tried to chase Appellant, there was testimony that Appellant turned and shot the gun, hitting Herrold in the leg. Much like Bailey, Herrold also denied any knowledge of a drug transaction.

Despite the fact the testimony differed with respect to whether a drug transaction was taking place, all three witnesses testified that Appellant emerged from the vehicle, with a gun, and robbed Bailey. Thus, the State presented evidence which, if believed, would indicate that an aggravated robbery occurred, and that each

element of the crime, as set forth above, was met. We now turn to Appellant's argument regarding the use of the firearm, and whether it was used in furtherance of a theft offense. Although there is some question as to whether the firearm subsequently recovered from the vehicle was the same gun Appellant used during the commission of the crime, and although there appeared to be some questions raised as to who actually shot Herrold based upon the expert testimony that there was no gun residue on Appellant's hands, three people testified that Appellant possessed and brandished a gun with a silver handle as he robbed Bailey.

We, as a Court, are not called upon to determine the credibility of these witnesses, nor weigh the evidence that was presented. Rather, in considering a sufficiency of the evidence challenge, as set forth above, we must assess whether the State's evidence, if believed, would support a conviction. *Thompkins, supr*a, at 390, 678 N.E.2d 541. Further, in making this assessment, we "must construe the evidence in a light most favorable to the prosecution." *Hill* at 205, 661 N.E.2d 1068 and *Grant* at 477, 620 N.E.2d 50, *supra*. Because we conclude, based upon the evidence presented, that reasonable minds could conclude that all of the essential elements of the offense of aggravated robbery had been proven beyond a reasonable doubt, we will not overturn Appellant's conviction based upon a sufficiency of the evidence challenge. Accordingly, Appellant's first assignment of error is without merit and is, therefore, overruled.

*State v. Love*, 2014 WL 1494128, at *3-4.

A claim of insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(*en banc*).  In order for a conviction to be constitutionally sound, every element of the crime must have been proven beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the

> testimony, to weigh the evidence and to draw reasonable
> inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). This rule has been recognized in Ohio. *State v. Jenks*, 61 Ohio St.3d 259 (1991). Of course, it is state law that determines the elements of an offense. Once the state has adopted the elements of the offense, the state must then prove each of those elements beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

The AEDPA requires two levels of deference to state decisions addressing a claim of sufficiency of the evidence: one to the trier of fact's verdict under *Jackson v. Virginia*, and a second to the appellate court's consideration of that verdict. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal
> habeas proceedings because they are subject to two layers of
> judicial deference. First, on direct appeal, "it is the responsibility
> of the jury—not the court—to decide what conclusions should be
> drawn from evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient evidence only
> if no rational trier of fact could have agreed with the jury."
> *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 181 L.Ed.2d 311,
> 313 (2011) (*per curiam*). And second, on habeas review, "a federal
> court may not overturn a state court decision rejecting a sufficiency
> of the evidence challenge simply because the federal court
> disagrees with the state court. The federal court instead may do so
> only if the state court decision was 'objectively unreasonable.'+"
> *Ibid.* (quoting *Renico v. Lett*, 559 U.S. ——, ——, 130 S.Ct. 1855,
> 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ——, ——, 132 S.Ct. 2060, 2062 (2012)(*per curiam*). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). This hurdle is a difficult one to surmount. For the reasons detailed by the state appellate court, this Court is not persuaded that Petitioner has done so here.

Claim one is without merit.

## Claim Two

In claim two, Petitioner alleges that the trial court improperly imposed consecutive terms of incarceration without making the findings required under Ohio law, and in view of Petitioner's status as a first time felony offender.  Petitioner has clarified that he does not raise a claim under the Double Jeopardy Clause.[1]  *See Traverse* (ECF No. 8, PageID# 645).

The state appellate court rejected this claim in relevant part as follows:

> Several statutory provisions are relevant to our analysis of this issue. R.C. 2929.14(B)(1)(a)(ii) requires a trial court to impose a three-year prison term upon an offender who is convicted of or pleads guilty to a R.C. 2941.145 firearm specification. R.C. 2929.14(B)(1)(b) precludes a trial court from imposing "more than one prison term on an offender [for a firearm specification] for felonies committed as part of the same act or transaction," unless R.C. 2929.14(B)(1)(g) authorizes it.  *State v. Ayers*, 12th Dist. Warren No. CA2011–11–123, 2013–Ohio–2641, ¶ 22; *State v. Sheffey,* 8th Dist. Cuyahoga No. 98944, 2013–Ohio–2463, ¶ 27.

> R.C. 2929.14(B)(1)(g) states:

> "If an offender is convicted of or pleads guilty to two or more felonies, *if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault*, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications." (Emphasis added)

---

[1] The state appellate court also rejected Petitioner's claim under the Double Jeopardy Clause, finding that, "although the aggravated robbery and felonious assault charges stemmed from the same course of conduct, each charge involved a different victim.  Thomas Bailey was the victim of aggravated robbery while Michael Herrold was the victim of felonious assault."  *State v. Love*, 2014 WL 1494128, at *5.

In *State v. Isreal*, 12th Dist. Warren No. CA2011–11–115, 2012–Ohio–4876, ¶ 73, the court recognized that R.C. 2929.14(B)(1)(g) creates an exception to the general rule prohibiting multiple punishments for firearm specifications arising out of a single transaction. The *Isreal* court explained as follows:

"[R.C. 2929.14(B)(1)(g) ] carve[s] out an exception to the general rule that a trial court may not impose multiple firearm specifications for crimes committed within a single transaction. The mandatory language of the statute ("the court shall impose") also indicates the General Assembly's intention that the defendant serve multiple sentences for firearm specifications associated with the enumerated crimes, such as murder or felonious assault. Had the Legislature intended a per se rule that sentences for firearm specifications must be served concurrent with one another, it could have stated as much. Or, the Legislature could have chosen not to codify R.C. 2929.14(B)(1)(g), which serves as an exception to the rule that multiple firearm specifications must be merged for purposes of sentencing when the predicate offenses were committed as a single criminal transaction." *Id*.

Appellant was convicted of two felonies that are specified in R.C. 2929.14(B)(1)(g): aggravated robbery and felonious assault. Additionally, Appellant was convicted of two firearm specifications as described in R.C. 2929.14(B)(1)(a) in connection with these two felonies. Thus, according to R.C. 2929.14(B)(1)(g), the court was required to impose on Appellant mandatory prison terms as described in 2929.14(B)(1)(a) for the two most serious specifications of which Appellant was convicted, even if, as Appellant argues, the crimes resulted from a single transaction. *Israel*, at ¶ 71; *accord Ayers* at ¶ 24; *Sheffey* at 28; *State v. Vanderhorst,* 8th Dist. Cuyahoga No. 97242, 2013–Ohio–1785, ¶¶ 10–11. Consequently, the trial court did not err by ordering Appellant to serve the firearm specification prison terms consecutively to one another. Likewise, we reject the argument that the trial court erred by requiring Appellant to serve the firearm specification prison terms consecutively to the aggravated robbery and felonious assault prison terms. R.C. 2929.14(C)(1)(a) plainly requires an offender to serve a mandatory prison term imposed for a firearm specification "consecutively to any other mandatory prison term imposed [for a firearm specification] * * * [and] consecutively and prior to any prison term imposed for the underlying felony."

In light of the foregoing, we cannot conclude that the trial court committed harmful error in sentencing Appellant. As such,

> Appellant's second assignment of error is without merit and is, therefore, overruled. Having found no merit to either assignment of error raised by Appellant, we affirm the decision of the trial court.

*State v. Love,* 2014 WL 1494128, at \*5-6.

Petitioner contends that his sentence is "fundamentally unfair." *Traverse* (ECF No. 8, PageID# 644). However, this contention – and this claim – raises only an issue regarding the alleged violation of state law. Such a claim fails to provide a basis for federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 18 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir.1988). "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir.1985)). It is only where the error resulted in the denial of fundamental fairness that habeas relief will be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Such are not the circumstances here.

Claim two is without merit.

### Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction

between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982) *(per curiam)* (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – *i.e.,* they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards,* 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted."

15

*Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005).  Or, if procedurally defaulted, the petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v.* Boerckel, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Id.* at 452–53.

If, after considering all four factors of the *Maupin* test, the habeas court concludes that a procedural default has occurred, it must not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the

petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray,* at 495–96 (1986)).

In claim three, Petitioner alleges that he was denied the effective assistance of trial counsel because his attorney failed to object to the introduction of Petitioner's prior juvenile record. In claim four, Petitioner alleges that he was denied the effective assistance of trial counsel because his attorney failed to impeach witnesses, failed to file a motion to suppress evidence, failed to object to the imposition of sentence, failed to object to the introduction of Petitioner's juvenile record, and failed to objection to prosecutorial misconduct. In claim five, Petitioner alleges that he was denied a fair trial because of the admission of perjured testimony. In claim six, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. Petitioner failed to raise any of these claims on direct appeal, where he was represented by new counsel. Further, he may now no longer do so by operation of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Moreover, Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman,* 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and

17

regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim."  *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).  The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e*., the *Perry* rule, is an adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006*); Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred.  *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16.  Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.  With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law.  Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner may still secure review his claims on the merits if he demonstrates cause for his failure to follow this state procedural rule, as well as actual prejudice from the constitutional violations that he alleges. In habeas corpus claim seven, Petitioner alleges the denial of the effective assistance of appellate counsel.

As discussed *supra*, such a claim may constitute cause for a procedural default, so long as the claim has been presented to the state courts and is not, itself, procedurally defaulted.

*Edwards,* 529 U.S. at 451-52. Here, however, Petitioner has procedurally defaulted his ineffective assistance of appellate counsel claim. The state appellate court explicitly denied Petitioner's Rule 26(B) application for failure to establish good cause for the untimely filing. *Decision and Judgment Entry* (ECF No. 7-1, PageID# 253-60.) Consequently, the first and second parts of *Maupin* test have been met with respect to even this claim. Further, the Sixth Circuit has recognized that the timeliness requirement of Ohio Appellate Rule 26(B) is an adequate and independent state ground for relief. *Fautenberry v. Mitchell*, 515 F.3d 614 (6th Cir. 2008).

Petitioner argues that he mailed his Rule 26(B) application to the state court clerk in a timely manner, because he submitted it for mailing on July 7, 2014, *i.e.,* prior to the filing deadline. *Traverse* (ECF No. 8, PageID# 642); *Affidavit of Clarity* (ECF No. 7-1, PageID# 244). However, "[f]ederal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state." *Vroman v. Brigano*. 346 F.3d 598, 604 (6th Cir. 2003)(citing *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986)). Further, the Ohio Supreme Court has expressly rejected the "mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 270 (1988)(a *pro se* prisoner's notice of appeal is considered to be filed in a federal court case when he submits it to prison officials for mailing). *Id.* Therefore, this Court will not reconsider the state appellate court's determination that Petitioner's Rule 26(B) application was untimely. *See id.* Further, the fact that Petitioner may have submitted his Rule 26(B) application to prison officials for mailing shortly before the expiration of the time for filing does not establish cause for his procedural default.

"[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d

412, 418 (6th Cir. 1999) (internal citation omitted)).  A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural requirements are insufficient bases to excuse a procedural default.  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).  Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him."  *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).  Petitioner has failed to do so here.

The United States Supreme Court has held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims."  *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995).  "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  *Murray,* 477 U.S. at 496.  In *Schlup,* the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition.  *Schlup*, 513 U.S. at 317.  However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' "  *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence—not previously presented at trial—would allow no reasonable juror to find him guilty beyond a reasonable doubt.  *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained the exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional

20

> error, the petitioner should be allowed to pass through the gateway
> and argue the merits of his underlying claims." *Schlup*, 513 U.S. at
> 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is
> whether "new facts raise[ ] sufficient doubt about [the petitioner's]
> guilt to undermine confidence in the result of the trial." *Id*. at 317,
> 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual
> innocence, "a petitioner must show that it is more likely than not
> that no reasonable juror would have found petitioner guilty beyond
> a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130
> L.Ed.2d 808. The Court has noted that "actual innocence means
> factual innocence, not mere legal insufficiency." *Bousley v. United
> States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828
> (1998). "To be credible, such a claim requires petitioner to support
> his allegations of constitutional error with new reliable evidence—
> whether it be exculpatory scientific evidence, trustworthy
> eyewitness accounts, or critical physical evidence—that was not
> presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130
> L.Ed.2d 808. The Court counseled however, that the actual
> innocence exception should "remain rare" and "only be applied in
> the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851,
> 130 L.Ed.2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted).  Petitioner does not meet these standards here.

After an independent review of the record, the Court does not deem this to be so extraordinary a

case as to relieve petitioner of his procedural default.

Claims three through seven are procedurally defaulted.

**Claim Eight**

In claim eight, Petitioner alleges that he was denied due process because the state

appellate court failed to consider his *Affidavit of Clarity* in denying his Rule 26(B) application as

untimely.  This claim fails to present a basis for federal habeas corpus relief.  "'[T]he essence of

habeas corpus is an attack by a person in custody upon the legality of that custody, and … the

traditional function of the writ is to secure release from illegal custody.'"  *Cress v. Palmer*, 484

F.3d 844 (6th Cir. 2007)(citing *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986)(quoting *Preiser

v. Rodriguez*, 411 U.S. 475, 484 (1973)(holding that errors in post-conviction proceedings are

outside the scope of federal habeas corpus review).  Such a due process claim, even if resolved in

Petitioner's favor, "would not 'result [in] … release or a reduction in … time to be served or in

any other way affect his detention because we would not be reviewing any matter directly

pertaining to his detention.'"  *Id.* (citing *Kirby*, 794 F.2d at 247).

> Accordingly. . . "the scope of the writ [does not] reach this second
> tier of complaints about deficiencies in state post-conviction
> proceedings," [as] "the writ is not the proper means" to challenge
> "collateral matters" as opposed to "the underlying state conviction
> giving rise to the prisoner's incarceration."

*Id*.

Claim eight fails to provide a basis for habeas corpus relief.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen

days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A judge of this Court shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection is

made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may

recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and

Recommendation* will result in a waiver of the right to have the district judge review the *Report

and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of

the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

April 7, 2017